ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR 22 2005

CLERK, U.S. DISTRICT COURT
BY _____
              DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| SALLY E. MARTIN, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:04-CV-188-Y |
| | § | |
| JO ANNE B. BARNHART, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions and Recommendation of

the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

A.    STATEMENT OF THE CASE

Plaintiff Sally E. Martin brings this action pursuant to Sections 405(g) and 1383(c)(3) of Title

42 of the United States Code for judicial review of a final decision of the Commissioner of Social

Security denying her claim for disability benefits under Title II and supplemental security income

or SSI benefits under Title XVI of the Social Security Act.   Martin applied for disability insurance

benefits and SSI benefits in June 2002, alleging a disability onset date of June 15, 2001.  (Tr. 51).

She meets the requirements for disability insured status through 2007. (Tr. 55).

After the Social Security Administration denied her applications for benefits initially and on

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 1**

reconsideration, Martin requested a hearing before an administrative law judge (the "ALJ"), and ALJ

William H. Helsper held a hearing on October 21, 2003 in Fort Worth, Texas. (Tr. 223-34). Martin

was represented by counsel. On October 29, 2003, the ALJ issued an unfavorable decision, finding

Martin was not disabled because she was able to perform her past relevant work as an assembler.

(Tr. 14-19). The Appeals Council denied Martin's request for review of her case, leaving the ALJ's

decision to stand as the final decision of the Commissioner. (Tr. 5).

B.     STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental

impairment lasting at least twelve months that prevents the claimant from engaging in substantial

gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir.

1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-

step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently

working at any substantial gainful activity. Substantial gainful activity is defined as work activity

involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527,

416.972.   Second, the claimant must have an impairment or combination of impairments that is

severe. An impairment or combination of impairments is severe if it has more than minimal effect

on the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c),

416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d

378, 392 (5th Cir. 2000). At the third step, disability will be found if claimant's impairment or

combination of impairments meets or equals an impairment listed in the appendix to the regulations.

*Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of claimant's

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 2**

medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any  work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley,* 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart,* 276 F.3d 716, 718 (5th Cir. 2002). A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 3**

Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.    ISSUES

At issue is whether the ALJ failed to apply the correct legal standards in finding that Martin had no severe mental impairment and whether that determination is supported by substantial evidence.

D.    ADMINISTRATIVE RECORD

1.    Treatment History[1]

Martin was born September 16, 1950, and was 50 years old on June 15, 2001, her alleged onset date of disability.  She quit school in the eleventh grade and has not obtained a GED or any vocational training.  (Tr. 231).  She most recently worked as a waitress for four years, first full-time from June 1998 to June 2001, then part-time until June 2002. (Tr. 76, 82).  Martin did not earn sufficient wages after June 2001 in her part-time work for such work to be considered substantial gainful activity. (Tr. 18, 82).

Martin went to the emergency room on January 24, 2002 because she had a fluttering feeling in her chest, dizziness, and a rapid respiration rate.  (Tr. 111-12). Multiple tests revealed no cardiac source of her chest complaints. The examining physicians hypothesized that Martin was experiencing symptoms of acid reflux disease, which were relieved with the use of medication.  (Tr. 111-13). Anxiety was listed as one of her discharge diagnoses.

---

[1] Martin challenges the Commissioner's decision only with respect to her mental impairments.  A review of her medical history will be limited accordingly.

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 4**

On February 13, 2002, Martin sought follow-up treatment at John Peter Smith ("JPS") Outpatient Clinic where she saw physician Leslie Svoboda. (Tr. 144, 189-90). She told Svoboda that she had had heart palpitations years earlier that had resolved after she stopped consuming caffeine. Based on her reported history, Martin was advised to taper off caffeine again. Svoboda speculated that Martin's additional complaints of chronic fatigue might be related to depression. (Tr. 190).

Martin had not improved by her next appointment with Svoboda on March 15, 2002. (Tr. 187). She reported worsening nervousness, a fear of crowds, a fear of leaving her house, and continued heart palpitations. She was tearful during the interview. Svodoba diagnosed Panic Disorder and prescribed a "Zoloft starter kit."[2] (Tr. 188) When Martin returned on May 3, 2002, she described her panic attacks as "50% better," but worse in the mornings as she prepared to go to her part-time job. (Tr. 185). Svodoba recommended that Martin seek specialized mental health treatment and referred her to the JPS Viola Pitts-Como Behavioral Health Clinic (BHC). (Tr. 186). In the interim, she increased Martin's dosage of Zoloft. (Tr. 184-186). Svodoba saw Martin on June 6, 2002 (before her first scheduled appointment at the BHC), and again increased Martin's dosage of Zoloft. (Tr. 182-83).

On June 17, 2002, Elma Granado of the JPS Viola Pitts-Como BHC saw Martin for a full psychiatric assessment. (Tr. 173-178). Granado recorded Martin's report of symptoms, including tremulousness, heart palpitations, shortness of breath, and phobic fears. (Tr. 175). On formal mental

---

[2] Zoloft is the trade name for sertraline hydrochloride, an antidepressant. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1629 , 1997 (29th ed. 2000).

<u>**Findings, Conclusions and Recommendation of**</u>
<u>**the United States Magistrate Judge**</u>**–Page 5**

status examination, Granado described Martin as tense with a moderate level of anxiety. Granado
diagnosed Panic Disorder with agoraphobia and assessed Martin's current Global Assessment of
Functioning ("GAF") score as 50. [3] (Tr. 178) . Granado continued Martin on Zoloft, and also
prescribed Xanax and Neurontin.[4] (Tr. 178).

Martin did not tolerate Neurontin well, so Granado discontinued it at her next evaluation on
July 22, 2002. (Tr. 169-170). Martin was still experiencing episodes of panic and using avoidance
as a coping mechanism for situations that caused fear. She reported fragmented sleep and somatic
complaints of back pain, and exhibited a mildly depressed mood.

At her August 26, 2002 follow-up appointment with Granado, Martin reported that she had
enjoyed some symptom-free periods with the regular use of Xanax. (Tr. 166). However, she still
exhibited signs of phobic avoidance, such as her reported inability to take a shower when home
alone. (Tr. 166). Granado observed continuing tense and apprehensive behaviors, mildly depressed
mood, and moderate anxiety on Martin's mental status exam, and decided to prescribe Neurontin
again.

As part of the disability application process, Martin saw psychiatrist Tara Reddy, M.D., in
September 2002 for a consultative evaluation. (Tr. 118-120). Martin reported having panic attacks
since March 2002, and described her symptoms as a pounding heart, shakiness, breathlessness,

---

[3] A GAF score is a standard measurement of an individual's overall functioning level with respect to
psychological, social, and occupational functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND
STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994)(DSM-IV). A GAF score of 41 to 50 indicates
serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment
in social, occupational or school functioning (e.g., no friends, unable to keep a job). *See id.* at 34.

[4] Xanax is used in the treatment of anxiety and panic disorders. DORLAND'S at 54, 1990. Neurontin is an
anti-seizure medication. *Id.* at 721, 1212.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 6**

flushing, and profuse sweating that made her think she was having a heart attack. (Tr. 118). She had experienced two to three panic attacks per day before beginning treatment with medication and continued to have one attack daily even with medication. Martin also reported crying easily, feeling tired, sleeping erratically, isolating herself socially, and feeling sad most of the time.

On examination, Martin made good eye contact and her psychomotor activity was considered to be within normal limits. (Tr. 119). Her speech was relevant and coherent. Her mood was anxious, with an appropriate affect. Remote memory was good, but recent memory was impaired and immediate recall was poor. (Tr .119). Her concentration was good and her judgment was intact. She demonstrated good insight and average intelligence. Her pace and persistence were assessed as slow. (Tr. 119).

Reddy concurred in the diagnosis of panic disorder, without agoraphobia, and added a diagnoses of major depression, single episode, moderate, with a current GAF score of 58 and previous GAF score of 70 to 75. [5] (Tr. 119-20). Martin's prognosis was considered good with continued treatment.

Martin saw Granado again on October 14, 2002. Martin reported that the frequency of her panic attacks had increased, and she had most recently had an attack while en route to her appointment. (Tr. 162). She linked the exacerbation of her anxiety to her mother's health problems. Granado observed that Martin had a constricted affect, depressed mood, and moderate anxiety.

---

[5] A GAF score of 51-60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning ,e.g., few friends, conflicts with peers or co-workers. DSM-IV at 34. A GAF score of 70 reflects mild symptoms. *Id.*

Martin had been taking Neurontin without adverse side effects, so Granado increased the prescription to address Martin's symptoms. (Tr. 163). No further records were provided regarding Martin's mental health treatment after October 2002.

2.    Administrative Hearing

Martin was fifty-three years old on October 21, 2003, the date of the administrative hearing. (Tr. 226). She last worked in 2002 at a fast food restaurant and testified that she quit because of her panic attacks and trouble with her back and legs. (Tr. 227). She did not think she could perform any of her past jobs due to her physical and mental problems. She testified that she continued to receive mental health treatment from the JPS behavioral health clinic, and indicated that her medication was somewhat helpful. (Tr. 228).

Martin testified that she did little during the day. She walked to help her back, but could not walk or sit for long periods. She testified that her appetite was not good, and she did not sleep well at night. (Tr. 228). She went to bed between 3:00 and 5:00 a.m., and slept until 10:00 a.m. She was able to drive short distances, but did not drive too far by herself because of panic attacks. (Tr. 229).

Vocational expert Barbara Dunlap testified during the hearing and identified the job of waitress as light, semi-skilled work. (Tr.232-33). Before working as a waitress, Martin had worked at various grocery stores as a cashier-checker, a semi-skilled, light job, and as an assembler, which was a semi -skilled, sedentary job as she performed it. (Tr. 232-33).

3.    ALJ Decision

The ALJ found that Martin had not engaged in substantial gainful activity since her alleged onset date of June 15, 2001 and had a severe back disorder, but her back impairment did not meet

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 8**

or medically equal any listed impairment. (Tr .18-19). The ALJ never expressly stated that Martin

had no severe mental impairment, but he found that Martin had no restrictions in her daily activities

or social functioning, and only mild deficiencies in concentration. (Tr. 18). Under the regulations,

such minimal findings are the equivalent of a determination that Martin's mental impairment was

not severe. *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). The ALJ further found that Martin's

allegations were not entirely credible and that she had the residual functional capacity (RFC) for the

full range of sedentary work activity. (Tr. 19). The ALJ concluded his analysis at Step Four of the

sequential evaluation process after finding that Martin's RFC did not preclude her from performing

her past relevant work as an assembler, rendering her ineligible for disability insurance or SSI

payments.

D.    DISCUSSION

Martin asserts that the ALJ erred at Step Two of the sequential evaluation process by failing

to apply Fifth Circuit case law, which defines an impairment as not severe only if it is a slight

abnormality having such minimal effect on the individual that it would not be expected to interfere

with the individual's ability to work. *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited*

*in Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000). The court must assume that the ALJ and

Appeals Council have applied an incorrect standard to the severity requirement unless the correct

standard is set forth by reference to *Stone* or another opinion of the same effect, or by an express

statement that the ALJ or Appeals Council is using the construction the Fifth Circuit has imposed

for what constitutes a severe impairment under 20 C.F.R. § 404.1520(c). *Loza*, 219 F.3d at 393;

*Stone*, 752 F.2d at 1106. Unless the correct standard is stated and used, the claim must be remanded

to the Secretary for reconsideration. *See Loza*, 219 F.3d at 393; *Davis v. Heckler*, 759 F.2d 432, 436 (5th Cir. 1985).

Martin argues that there is presumption of error in her case because the ALJ did not cite *Stone*, its language, or a case with a comparable holding. The ALJ's written decision, however, includes a citation to *Stone* in addressing the ALJ's responsibility at Step Two of the sequential evaluation process. (Tr. 15). The ALJ then concluded that Martin had a severe back disorder and noted that he would address her mental impairment later in his decision. (Tr. 15). Although Martin argues that the ALJ should have again cited *Stone* (or its equivalent) later in his decision when he addressed her mental impairment, she cites no case law or other authority requiring the ALJ to repeatedly identify relevant legal standards throughout his decision after correctly doing so earlier in his decision.

More troubling is Martin's assertion that substantial evidence does not support the ALJ's determination that her anxiety disorder is not severe. In particular, Martin contends that the ALJ's determination is contrary to the opinions offered by state agency medical consultant Lee Wallace, Ph.D. She asserts that the ALJ summarily rejected Wallace's assessment without weighing it as a medical source opinion.

Wallace found that Martin suffered from Major Depression and a Panic Disorder without agoraphobia, which resulted in mild restriction in her activities of daily living, moderate difficulty maintaining social functioning, and moderate difficulty maintaining concentration, persistence or pace, but no episodes of decompensation. (Tr. 129-41). Wallace also completed a mental residual functional capacity assessment form after indicating that such an assessment was needed. Wallace

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 10**

found Martin was markedly limited in her ability to travel in unfamiliar places or use public transportation. (Tr. 126). Wallace considered Martin to be moderately limited in several additional areas of functioning, including her ability to (1) remember locations and work-like procedures; (2) understand and remember detailed instructions; (3) carry out detailed instructions; (4) maintain attention and concentration for extended periods; (5) sustain an ordinary routine without special supervision; (6) work in coordination with or proximity to others without being distracted by them; (7) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; (8) interact appropriately with the general public; (9) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (10) respond appropriately to changes in work setting. (Tr. 125-26). Wallace concluded that Martin retained the ability to remember simple directions, make simple work-related decisions, adjust to routine changes in the work place, and get along adequately with co-workers. (Tr. 127). Wallace's assessment was affirmed on reconsideration. (Tr. 129).

Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence (from nonexamining sources) at the administrative hearing and Appeals Council levels of administrative review. 20 C.F.R. §§404.1527(f), 416.927(f); SOCIAL SECURITY RULING 96-6p. The administrative law judge and the Appeals Council are not bound by the state agency physicians' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions. SOCIAL SECURITY RULING 96-6p.

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 11**

Social Security Rulings are published under authority of the Commissioner and are binding on the Administration. *Hall v. Schweiker*, 660 F.2d 116, 119 n.4 (5th Cir. [Unit A] 1981)(per curiam). An agency must follow its own procedures, even if those procedures are more rigorous than what would otherwise be required. *Hall*, 660 F.2d at 119, *cited in Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000). Should the agency violate its internal rules and prejudice result, the proceedings are tainted and any action taken cannot stand. *Hall*, 660 F.2d at 119.

The ALJ did not ignore the state agency medical consultant's assessment of a severe mental impairment, but stated that he did not concur with that assessment "[i]n view of the evidence." (Tr. 18). The opinions of state agency psychological consultants are given weight insofar as the supported by the evidence, considering such factors as the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the consultant. SOCIAL SECURITY RULING 96-6p. *See generally* 20 C.F.R. §§ 404.1527(f), 416.927(f). The ALJ addressed none of these factors except for a vague reference to the remainder of the evidence. The ALJ did not specify what evidence he considered to be contradictory to Wallace's assessment. He did note elsewhere in his decision that medication helped Martin with her panic attacks, (Tr. 17), but he made no mention of consultative examiner Reddy's report on which the state agency medical consultant had relied or other evidence indicating that Martin's medication did not completely alleviate her condition. The ALJ also incorrectly stated that Martin had not testified about panic attacks during the administrative hearing, (Tr. 17), when in fact Martin did testify that she restricted her driving due to panic attacks and continued to receive treatment for her condition. (Tr. 227-29).

The Commissioner now asserts that Wallace's findings were unsupported by diagnostic

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 12**

techniques and inconsistent with other record evidence, including Martin's failure to provide records of any mental health treatment after 2002. The Commissioner further urges that the records reflect mental health treatment for a period of only five months, indicating that Martin's condition was short-term and situational and was not significant enough for a finding of a severe mental impairment.

The Commissioner's assertions in her brief may be a correct recitation of evidence in the record, but none of this reasoning is found in the body of the ALJ's decision. Without a similar discussion in the ALJ's written decision, the court has nothing to review as it cannot rely on the Commissioner's post hoc rationalizations as substantial evidence to support the ALJ's determination. *See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)(holding that decision stands or falls with the reasons set forth in ALJ's decision as adopted by Appeals Council). The Commissioner's decision should be reversed and remanded so that the proper techniques can be applied, all medical evidence and opinions–including those offered by the state agency medical consultants–can be discussed, and the ALJ's decision can be revised as deemed necessary after a full and fair review of the record. *See generally* 20 C.F.R. §§ 404.1527, 416.927; SOCIAL SECURITY RULING 96-5p, 96-6p, 96-8p.

RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings consistent with these proposed findings of fact and conclusions of law.

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 13**

### NOTICE OF RIGHT TO OBJECT TO PROPOSED
### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until April 12, 2005. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

### ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until April 12, 2005 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 14**

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED MARCH 22, 2005.

CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 15**